226 F.2d 637
 MARYLAND CASUALTY COMPANY
v.
Robert S. MARSHBANK, Robert S. Marshbank, Jr., a Minor,
Charles N. Hoak, Jr., a Minor, Robert H. Stover and Ruth E.
Stover, His Wife, Mary Beaver, a Minor, Wayne Shoemaker,
Edward Manning, George E. DeVall and Elizabeth J. DeVall,
His Wife, John Conn, Robert Washington, Robert H. Stover,
Administrator of the Estate of Mary Stover, Deceased.
 No. 11594.
 United States Court of Appeals Third Circuit.
 Argued Oct. 6, 1955.
Decided Oct. 28, 1955.
 
 F. Brewster Wickersham, Harrisburg, Pa. (Edward E. Knauss, III., Metzger & Wickersham, Harrisburg, Pa., on the brief), for appellant.
 Robert L Myers, III, Lemoyne, Pa. (Myers, Myers & Flower, by Robert L. Myers, Jr., Lemoyne, Pa., for Stovers. William M. Hargest, Jr., Harrisburg, for Robert S. Marshbank and Robert S. Marshbank, Jr. Shelley, Reynolds & Lipsitt, by William W. Lipsitt, Harrisburg, Pa., for Charles N. Hoak, Jr. Thomas C. , zerbe, Harrisburg, Pa., for Mary Beaver, on the brief), for appellees.
 Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.
 MARIS, Circuit Judge.
 
 
 1
 The Maryland Casualty Company, of Baltimore, Maryland, brought an action in the District Court for the Middle District of Pennsylvania for a declaratory judgment as to its liability under an automobile liability and physical damage policy which it had issued to Robert S. Marshbank. The controversy with respect to the extent of the liability of the Maryland Casualty Company under the policy arose out of the following factual situation as found by the district court upon ample evidence:
 
 
 2
 The Maryland Casualty Company issued its automobile liability and physical damage policy, effective from March 21, 1954 to March 21, 1955, to Robert S. Marshbank, of Harrisburg, Pennsylvania, as the named insured with respect to an automobile owned by him. On April 10, 1954 the policy was amended by endorsement so as to cover the operation of the automobile by persons under 25 years of age.
 
 
 3
 On May 15, 1954 Marshbank's son, Robert S. Marshbank, Jr., in the presence of Charles N. Hoak, Jr., requested permission of his father to use the automobile in question for the purpose of enabling him and Charles to take Mary Stover and Mary Beaver to a moving picture theatre. Marshbank then and there gave his permission for the use of his automobile for that purpose. At the time the permission was given nothing was said as to who should drive the car but Marshbank left it up to his son to determine who should drive, knowing that Charles, as well as his son, was a licensed driver.
 
 
 4
 Thereafter the two young men, accompanied by the two girls as passengers, drove toward Carlisle, Pennsylvania, intending to go to a moving picture theatre at the latter place. At some time after leaving his home Robert, Jr. turned the driving of the automobile over to Charles and at 8:15 P.M. while Charles was driving the automobile westwardly in Cumberland County about two miles east of Carlisle a collision occurred involving the Marshbank automobile in which they were riding and two other automobiles. As a result of the collision all four occupants of the Marshbank automobile were injured and one of them, Mary Stover, subsequently died.
 
 
 5
 The insurance policy in question contained the following clause:
 
 
 6
 'III. Definition of Insured With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *'
 
 
 7
 Following the accident a controversy arose as to whether Charles was entitled to the protection of the policy as an additional insured within the meaning of the foregoing policy definition of 'insured'. It was to determine its liability under the policy with respect to Charles that the present declaratory judgment action was instituted by the Maryland Casualty Company as plaintiff. The plaintiff joined as defendants Robert S. Marshbank, Robert S. Marshbank, Jr., Charles N. Hoak, Jr. and all the other persons who were involved in the accident.
 
 
 8
 The district court concluded that Charles was an additional insured within the provisions of the insurance policy in question and entered a judgment so declaring. 128 F.Supp. 943. From the judgment thus entered the plaintiff, Maryland Casualty Company, has taken the appeal now before us. The question which this appeal presents is whether the district court was right in so declaring. The answer to that question turns upon whether the use of the automobile which Charles was making at the time of the accident was with the permission of the named insured, Marshbank, within the meaning of the definition of 'insured' contained in the policy. We think that the district court rightly decided that Charles' use of the automobile was with Marshbank's permission and that he was, therefore, entitled to the protection of being an additional insured under the policy in connection with the accident which occurred on May 15, 1954.
 
 
 9
 As the bases for a contrary conclusion the plaintiff seeks to read the term 'use of the automobile' as contained in the policy definition as the equivalent of 'operation of the automobile' and on this premise it argues that Marshbank did not give permission to Charles to operate his automobile. We think, however, that the premise is unsound and that the plaintiff is attempting to create an ambiguity in the language of the policy definition in order by construction to resolve it in its favor. To us the language of the clause seems so clear as to require no construction. The fallacy in the plaintiff's position is that the words 'use' and 'operation', which it seeks to equate as synonymous, are in this setting words of quite different meaning. For the 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another.[1]
 
 
 10
 It is only the actual or particular use of the automobile at the time of the accident by the individual who is claiming to be an additional insured that he must show to have been with the permission of the named insured if he is to come within the definition of the policy here involved. Accordingly since it was proved that Charles had such permission it was unnecessary to show that he also had permission to act as driver of the automobile. This is the view taken generally in this country[2] and it is the view adopted by the Pennsylvania courts, which in this case is controlling.[3] Thus in Conrad v. Duffin, 1945, 158 Pa.Super. 305, 309-310, 44 A.2d 770, 772, the Superior Court of Pennsylvania said:
 
 
 11
 'It is to be observed that the policy covers 'any person or organization legally responsible for the use (of the automobile or truck), provided the actual use[2] of the automobile is with the permission of the named insured.' It would seem that every person, firm, or corporation, other than those within the excluded classes which are not applicable to Abrams, are impliedly covered by the policy. By the express provision of the policy the named insured could have given permission to any person to use his truck, and the policy would have covered that person as to an accident which might have followed from such use. As the named insured leased the truck to Garlick for the express purpose of removing city ashes, there can be no doubt but that he thereby gave implied permission to workmen, whoever they might be, to engage in the use of the truck for the purpose for which it was leased, that is, the loading and unloading of ashes. This was the act Abrams was performing when the accident in question occurred. Liability of appellant under its policy is not based on the doctrine of respondeat superior, but rather on the ground that Abrams was within the category of persons insured by appellant thereunder.
 
 
 12
 It will be seen that the court held that the 'use' of the truck by Abrams, the truck driver, made him an additional insured because the purpose for which he was using the truck at the time of the accident, the removal of city ashes, was one for which the named insured had permitted the use of the truck. Since Abrams was actually using the truck for that purpose it was immaterial that he as an individual had no express permission from the named insured to operate it. Earlier Pennsylvania cases[4] indicating that permission from the named insured to operate as well as use the automobile must be shown if the operator is to be entitled to protection as an additional insured are not pertinent here since those cases involved policies in which the definition of insured referred to 'operation' as well as to 'use' of the automobile.
 
 
 13
 In the present case the use to which the Marshbank automobile was being put at the time of the accident was precisely the use which Marshbank, the named insured, had agreed to permit, namely the conveyance of the four young people, including Charles, for the purpose of attending the moving picture theatre. In order to be used for this purpose it was necessary for the automobile to be operated by someone and, as Marshbank testified, he left that matter entirely up to his son.
 
 
 14
 For the reasons just stated, our recent case of Aetna Casualty & Surety Co. v. DeMaison, 3 Cir., 1954, 213 F.2d 826, is inapposite. For it is clear that in that case the actual use to which the automobile there in question was being put at the time of the accident was not the use for which permission had been given. In that case the named insured had given his son permission to use his automobile to go to a moving picture theatre in Jenkintown, Pennsylvania. The son drove then to an inn at Ardsley, three miles beyond Jenkintown, there meeting Mr. and Mrs. DeMaison who joined him in a further excursion to a diner at Willow Grove still farther beyond Jenkintown. During the course of the latter trip the son turned the operation of the car over to Mrs. DeMaison and while she was driving an accident occurred.
 
 
 15
 The law of Pennsylvania is clear that the term 'actual use', as employed in these policy definitions, requires that permission must be shown for the particular use to which the car is being put at the time of the accident.[5] Where, as in the DeMaison case, there has been a deviation at the time of the accident from the particular use for which permission was given the user at that time does not come within the policy definition as an additional insured. This court accordingly held in the DeMaison case, applying the Pennsylvania law, that Mrs. DeMaison was not an additional insured within the policy definition. It will be seen that the distinction between the use and operation of the automobile, which is crucial in this case, was of no legal significance in the DeMaison case.
 
 
 16
 The judgment of the district court will be affirmed.
 
 
 
 '2 The words 'the actual use' really mean 'the particular use.' Laroche v. Farm Bureau Mutual Automobile Insurance Co., 335 Pa. 478, 483, 7 A.2d 361, 363.'
 
 
 [1]
 See Brown v. Kennedy, 1943, 141 Ohio St. 457, 48 N.E.2d 857
 
 
 [2]
 Arcara v. Moresse, 1932, 258 N.Y. 211, 179 N.E. 389; Donovan v. Standard Oil Co. of Louisiana, La.App.1940, 197 So. 320, 324; Persellin v. State Automobile Ins Ass'n, 1948, 75 N.D. 716, 32 N.W.2d 644; Schimke v. Mutual Auto. Ins. Co. of Town of Herman, 1954, 266 Wis. 517, 64 N.W.2d 195. See also 45 C.J.S., Insurance, § 829cc
 
 
 [3]
 In this case of diverse citizenship we apply the law of Pennsylvania. Roth v. Maryland Cas. Co., 3 Cir., 1954, 209 F.2d 371, 373
 
 
 [4]
 Brower v. Employers' Liability Assurance Company, Ltd., 1935, 318 Pa. 440, 177 A. 826; Freshkorn v. Marietta, 1942, 345 Pa. 416, 29 A.2d 15
 
 
 [5]
 LaRoche v. Farm Bureau Mut. Automobile Ins. Co., 1939, 335 Pa. 478, 483, 7 A.2d 361, 363; Conrad v. Duffin, 1945, 158 Pa.Super. 305, 309, 44 A.2d 770, 772