530 A.2d 929

FEDERAL KEMPER INSURANCE COMPANY

v.

Thomas J. NEARY, Sr. and Dolores I. Neary, Admrs. of the Estate of Thomas J. Neary, Jr., Deceased; Paul R. Waite, Sr.; Brian Mangle and Norman Keefer

v.

ERIE INSURANCE EXCHANGE.

Appeal of Norman KEEFER.

Superior Court of Pennsylvania.

Argued March 31, 1987.

Filed Aug. 31, 1987.

Charles E. Friedman, Harrisburg, for appellant.

Clyde W. McIntyre, Harrisburg, for Erie Ins. Exchange, appellee.

Before WIEAND, BECK and CERCONE, JJ.

WIEAND, Judge:

The issue in this declaratory judgment action involves the interpretation of an omnibus clause contained within a policy of automobile insurance. The named insured under the policy had entrusted the insured auto to his stepson on the condition that the stepson not permit anyone else to operate the vehicle unless the stepson was incapable of

driving and the other person possessed a driver's license. The stepson allowed the car to be operated by a minor, unlicensed driver after the latter had fraudulently misrepresented his age and the fact that he held a valid learner's permit to drive. The trial court held that under these circumstances the omnibus clause did not provide liability coverage for the unlicensed driver because he had not had the permission of the insured to drive the car. We affirm.

In 1981, Paul R. Waite, Sr. purchased a 1971 Opel automobile for use by his family. Waite immediately obtained insurance for the vehicle from Erie Insurance Exchange (Erie). Although Waite and his wife were the only named insureds in the policy, coverage was expanded according to the following omnibus provision:

Others We Protect

. . . .

(2) Any person using ... an owned car we insure. This operation or other use must be with your permission. . . .

Upon purchasing the auto, Waite established certain guidelines to be followed by his children when they used the car. Specifically, he forbade them from allowing anyone else to operate the vehicle unless (1) they were unable to drive; (2) the other person was licensed; and (3) that person was accompanied by one of the children.

On August 26, 1981, Waite's stepson, Brian Mangle, was given permission to use the car. Mangle drove to the home of his friend, Thomas J. Neary, Jr. With Mangle at the wheel, the two young men travelled to the residence of Neary's girlfriend. During the return trip, Neary requested that Mangle allow him to drive. Mangle acceded to this request after being assured by Neary that he (Neary) was then sixteen years of age and had a valid learner's permit to drive. In fact, Neary was only fifteen years old and had neither a license nor a learner's permit. Shortly after Neary took the wheel, the Opel collided with a vehicle

owned and operated by Norman Keefer. Neary was killed in the collision.

At the time of the accident, Neary's father, Thomas J. Neary, Sr., was insured under a policy of insurance which had been issued by Federal Kemper Insurance Company (Federal Kemper). Federal Kemper commenced a declaratory judgment action to determine whether it was obligated to defend Neary's estate in any action which might be brought against it as a result of the accident. Named as defendants in the declaratory judgment action were Mr. and Mrs. Neary, administrators of their son's estate; Paul Waite; his stepson, Brian Mangle; and Norman Keefer. Keefer subsequently caused Erie to be joined as an additional defendant, alleging that Neary had been covered under the omnibus provision of the policy issued by Erie to Waite. On January 16, 1985, following a non-jury trial, the trial court entered judgment on behalf of Federal Kemper, finding that Federal Kemper had "no obligation to indemnify or defend the estate of Thomas J. Neary, Jr. with respect to the claims of Paul R. Waite, Sr. and Norman E. Keefer arising out of the automobile accident of August 26, 1981, or to pay any judgments arising out of said claims." No appeal was taken from this judgment. Because the trial court had failed to make a determination with respect to the rights and responsibilities of the additional defendant, Erie, Keefer filed a motion to reconsider in which he requested the court to decide whether Erie was required to defend Neary's estate. Following argument, the trial court entered a further judgment that Erie was under "no obligation to indemnify or defend the estate of Thomas J. Neary, Jr. with respect to the claims of any other party hereto arising out of the automobile accident of August 26, 1981, or to pay any judgments arising out of said claims." The court reasoned that Neary was not covered by the terms of the policy issued by Erie to Waite because the minor Neary had not received express or implied permission from Waite to operate the vehicle at the time of the accident. Keefer filed a motion for post-trial relief which the

trial court denied. Keefer then appealed.[1]

In reviewing a judgment entered in a declaratory judgment action, we are bound by the same narrow standard of review which exists in equity actions. *Shaffer v. Flick*, 360 Pa.Super. 192, 195–196, 520 A.2d 50, 51 (1987); *Supp v. Erie Insurance Exchange*, 330 Pa.Super. 542, 544, 479 A.2d 1037, 1038 (1984). A judgment of a trial court will not be reversed absent a clear abuse of discretion or error of law. *Lombardo v. DeMarco*, 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258 (1985). The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. *Estate of Tippins*, 487 Pa. 107, 112 n. 2, 408 A.2d 1377, 1380 n. 2 (1979); *Lombardo v. DeMarco, supra*, 350 Pa.Super. at 495, 504 A.2d at 1258; *Hoffman v. Gekoski*, 250 Pa.Super. 49, 52, 378 A.2d 447, 448 (1977). Where the trial court's factual determinations are adequately supported by the evidence, we may not substitute our judgment for that of the trial court. *Frowen v. Blank*, 493 Pa. 137, 142, 425 A.2d 412, 415 (1981).

Under an omnibus clause of an automobile insurance policy which designates as insured any person using the insured vehicle with the permission of the owner, the permission necessary to elevate the user to the status of an additional insured may be express or implied. *Brower v. Employers' Liability Assurance Co., Ltd.*, 318 Pa. 440, 444, 177 A. 826, 828 (1935); *Esmond v. Liscio*, 209 Pa.Super. 200, 206, 224 A.2d 793, 796 (1966); *Conrad v. Duffin*, 158 Pa.Super. 305, 309, 44 A.2d 770, 772 (1945). See: *Belas v. Melanovich*, 247 Pa.Super. 313, 372 A.2d 478 (1977). See also: Blashfield, *Automobile Law and Practice* § 315.10, at 605 (3d ed. 1966). See generally: Annot., *Omnibus Clause as Extending Automobile Liability Coverage to Third Person Using Car with Consent of Permittee of Named Insured*, 21 A.L.R. 4th 1146 (1983). Implied per-

---

1. Although judgment was not entered against Keefer, his interest in the outcome of the within matter is sufficient to accord him standing to pursue the instant appeal. See: *Donegal Mutual Insurance Co. v. Eyler*, 360 Pa.Super. 89, 519 A.2d 1005 (1987).

mission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced. *Brower v. Employers' Liability Assumed Co., Ltd., supra,* 318 Pa. at 444, 177 A. at 828; *Esmond v. Liscio, supra,* 209 Pa.Super. at 206, 224 A.2d at 796; *Conrad v. Duffin, supra,* 158 Pa.Super. at 309, 44 A.2d at 772. See: Blashfield, *supra* § 315.10, at 607. "However, 'permission' requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile, and permission cannot be implied from possession and use of the automobile without the knowledge of the named insured." *Id.* § 315.10, at 608. "[T]he critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with his consent. There must be 'a connection made' with the named insured's own conduct; proof of 'acts, circumstances, and facts, such as the continued use of the car,' will be insufficient 'unless they attach themselves in some way to the acts' of the named insured." *Belas v. Melanovich, supra,* 247 Pa.Super. at 324, 372 A.2d at 484, quoting *Beatty v. Hoff,* 382 Pa. 173, 177, 114 A.2d 173, 174 (1955). See: *Crespy v. Bliesmer,* 248 Pa.Super. 441, 445, 375 A.2d 179, 181 (1977); *Helwig v. Esterly,* 205 Pa.Super. 185, 189, 208 A.2d 10, 12 (1965).

Keefer concedes on appeal that the evidence supported the trial court's finding that the Neary boy had not had the owner's express permission to drive or operate the vehicle. He argues, however, that inasmuch as Waite had not prohibited persons outside his family from riding in the vehicle as passengers, Neary had at least implied permission to "use" the vehicle. Because Neary had implied permission to "use" the vehicle as an occupant, the argument concludes, Neary was covered by the terms of the policy and Erie should be required to defend his estate in any action arising out of the fatal accident.

A similar argument was rejected by this Court in *Helwig v. Esterly, supra.* There, Joanne Esterly had been involved in a motor vehicle accident while driving a vehicle owned by

William and Mary Heffelfinger. Esterly had been given permission to operate the vehicle by Karl Heffelfinger, the son of the owners, who had been given permission to use the car by his parents and who had been riding as a passenger at the time of the accident. The right of Karl Heffelfinger to use the car, however, had been subject to the restriction that he not allow any other person to operate the vehicle, including, specifically, Esterly, who held only a learner's permit. After obtaining a recovery against Esterly, Helwig issued attachment execution proceedings against State Farm Mutual Automobile Insurance Company, which had written the policy providing coverage for the Heffelfinger vehicle. That policy contained an omnibus provision which extended coverage to "any person while using the [insured] automobile ..., provided the actual use is by the named insured or such spouse or with the permission of either." The trial court instructed the jury, in effect, that it was immaterial who had been operating the Heffelfinger car at the time of the accident so long as the vehicle was being used for a purpose which was within the contemplation of the owner at the time when he granted to his son the privilege of using the car. If the vehicle were being used for such a purpose, the court instructed, State Farm would be obligated to provide coverage. The jury returned a verdict in favor of Helwig. On appeal, State Farm argued that the trial court's instructions had been erroneous. In light of the Heffelfingers' specific directive that Esterly not be allowed to operate the car, it was argued, it was error to permit the jury to conclude that Esterly's "use" of the vehicle had been permitted implicitly. This Court agreed and reversed. We specifically rejected Helwig's contention "that the permission to Karl to use the car brought [Esterly] within that class [of individuals impliedly permitted to use the auto]." We said, "[i]t would be unreasonable to hold that Karl was privileged to disregard the explicit instruction of his father as to the manner in which he was to use his father's car." *Id.*, 205 Pa.Superior Ct. at 190, 208 A.2d at 12. Once Karl turned the steering wheel of the car over to Esterly in violation of and contrary to the express

instruction given by his father, we concluded, Karl's privilege to use the vehicle was terminated, and Esterly could not thereafter acquire implied permission to operate the vehicle. *Id.* Consequently, Esterly was operating the car without permission of the named insured and was not covered by the policy which had been issued by State Farm to the Heffelfingers. *Id.* On retrial, we said, the jury should be instructed that if "[the Heffelfingers'] restriction existed and [if] it was intended not to be violated, the violation would be a material deviation from the permitted use, which would prevent a recovery against State Farm, the insurer." *Id.*, 205 Pa.Superior Ct. at 190–191, 208 A.2d at 12.

The instant case is similar to *Helwig* in that it, too, involves an omnibus policy provision which extended coverage to persons using the insured vehicle with permission of the named insured. In the case sub judice, Brian Mangle had been given permission by his stepfather, Paul Waite, to use the automobile insured by Erie. However, Waite had specifically instructed Mangle not to permit anyone else to operate the vehicle unless that person were licensed to drive and then only if Mangle were present in the vehicle and unable to drive. Mangle violated this restriction when he permitted the car to be operated by an unlicensed driver. As in *Helwig*, there was no evidence in the instant case that the named insured had said or done anything to warrant the belief that the ensuing use by the unlicensed driver was with his consent. On the contrary, Waite's instructions to his stepson were clear that, except in exigent circumstances, the vehicle was not to be operated by persons outside his family, and in no event was it to be operated by an unlicensed driver. As *Helwig* suggests, it would be unreasonable to conclude that because Neary was entitled to occupy the insured vehicle as a passenger, he was impliedly allowed to operate the auto, even though the owner thereof had specifically prohibited operation of the car by individuals such as Neary who were not licensed to drive. We perceive neither error nor abuse of discretion in the trial court's

finding that Neary did not have implied permission to operate the vehicle on the day of the accident. Therefore, its resultant determination that Neary was not within the coverage provided by the Erie policy was also correct.

■ The trial court's determination is no less valid because, at the time Mangle permitted Neary to assume control of the insured automobile, he believed that Neary possessed a valid learner's permit. Where permission to use an insured automobile is obtained through fraud or deception, it is. void; and the one obtaining use of the vehicle in such manner may not claim the benefit of coverage under the omnibus provision of an automobile insurance contract. See: *Lusk v. Traveler's Insurance Co.*, 250 So.2d 197 (La.App.1971) (no coverage where student obtained permission to use teacher's automobile by misrepresenting fact that she possessed a driver's license); *Hodge v. Lumbermen's Mutual Casualty Co.*, 203 Va. 275, 123 S.E.2d 372 (1962) (fugitive from justice who misrepresented his identity to procure permission from car salesman to use one of dealer's vehicles was not covered under omnibus provision of dealer's insurance policy). See also: Blashfield, *supra* § 315.8, at 597; 7 Am.Jur.2d *Automobile Insurance* § 251, at 824 (1980). Instantly, Neary acquired permission to operate the 1971 Opel by misrepresenting to Mangle his age and the fact that he held a valid learner's permit. Thus, even if it could be concluded that Neary had implied permission to use the vehicle, that permission would have been vitiated by the fraudulent manner in which it was procured.

Under the circumstances of this case, the trial court correctly concluded that Neary was not covered under the policy of automobile insurance which had been issued by Erie. Therefore, Erie was not obligated to indemnify or defend the estate of Thomas Neary, Jr. with respect to any claim, including that of Keefer, arising out of the automobile accident of August 26, 1981.

Judgment affirmed.

BECK, J., concurs in the result.